**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JOHN LAWRENCE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06-CV-0661-CVE-PJC |
| CITY OF BIXBY and the OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's [City of Bixby] Motion for Summary Judgment (Dkt. # 41) and brief in support (Dkt. ## 42, 44). Defendant City of Bixby ("the City") moves for summary judgment on plaintiff's claims under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101 et seq. Plaintiff responds that the City waived any defense under the ADEA when it hired him in violation of Oklahoma law, and that he can proceed with a claim under state law.

**I.**

The City has participated in the Oklahoma Police Pension and Retirement System ("OPPRS") since 1978.[1] By statute, all police officers hired by the City must be members of OPPRS at the time they are hired or must be eligible for membership. The City hired John Lawrence ("Lawrence") as a deputy police chief on May 23, 2005. Lawrence was 52 years old at the time he

---

[1] OPPRS is a defined benefit plan, organized pursuant to section 401(a) of the Internal Revenue Code, that provides retirement benefits to retired law enforcement officers. As of June 30, 2006, it had 4,141 active members, 1,951 retirees, and 453 beneficiaries. Dkt. # 44, Ex. B.

was hired. On February 13, 2006, the City's police chief, Anthony Stephens ("Stephens"), received a letter from OPPRS stating that Lawrence was ineligible to participate in OPPRS. By statute, a new police officer is eligible to participate in OPPRS only if the police officer is between the ages of 21 and 45 at the time he is hired:

> All persons employed as full-time duly appointed or elected officers who are paid for working more than twenty-five (25) hours per week or any person hired by a participating municipality who is undergoing police training to become a permanent police officer of the municipality shall participate in [OPPRS] upon initial employment with a police department of a participating municipality. . . . Except as otherwise provided in this section, a police officer shall be not less than twenty-one (21) nor more than forty-five (45) years of age when accepted for membership in [OPPRS].

OKLA. STAT. tit. 11, § 50-112. Lawrence was not previously a member of OPPRS and he was not eligible to enroll as a member due to his age. OPPRS informed the City that it "must either terminate the police officer in question or reduce the officer's working hours to twenty five (25) hours or less per week." Dkt. # 44, Ex. D, at 2.

The City attempted to exempt Lawrence from OPPRS membership by claiming that Lawrence served in an administrative position only, and asserted that Lawrence was not required to enroll in OPPRS. The City classified Lawrence as an "Assistant Chief of Police and Administrative Assistant to the Chief of Police" rather than as a police officer. Id., Ex. E, at 1. On May 9, 2006, OPPRS inquired of the City why Lawrence had not been terminated. The City treated the May 9, 2006 letter as a denial of its request for an exemption, and advised Stephens that he must terminate Lawrence . The City considered redefining Lawrence's job duties, but the City told Stephens that:

> We have discussed the possibility of designating John Lawrence as a Safety Officer, Administrative Assistant, or some other "title" that would enable him to continue to work and function as intended for the City of Bixby Police Department.

> Unfortunately, this would remove his authority to function as a police officer when needed. He could neither serve warrants, wear a badge or carry a firearm. It is my understanding that he does not wish to be relegated to clerical work nor does the City of Bixby Police Department have any desire to employ him in that capacity.

Id., Ex. F, at 1. On May 17, 2006, the City terminated Lawrence's employment. The City states that it fired Lawrence solely because he was not eligible for membership in OPPRS.[2]

On December 5, 2006, plaintiff filed this lawsuit against the City, the City of Bixby Police Department, and individual defendants alleging that the City terminated plaintiff's employment in violation of the ADEA and Oklahoma anti-discrimination statutes. Plaintiff subsequently amended his complaint to remove the individual defendants and the City of Bixby Police Department as defendants, and he added a claim against OPPRS for tortious interference with employment. Plaintiff alleges that the City "knowingly and intentionally hired plaintiff in direct violation" of Oklahoma law and, therefore, the City waived any defenses under state or federal law to plaintiff's employment discrimination claims. The City argues that the ADEA exempts it from liability for age-based decisions concerning law enforcement personnel. The City also argues that plaintiff does not have a private right of action under Oklahoma law to bring a claim for age discrimination.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates

---

[2] Plaintiff disputes the City's statement that it fired him solely to comply with OPPRS's demand. However, he does not identify the basis for his dispute and cites no evidence controverting the City's statement.

3

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

The City argues that it is entitled to summary judgment on plaintiff's age discrimination claims under federal and state law. The City claims that it is exempt from liability under the ADEA, because it terminated plaintiff pursuant an age restriction required by a bona fide retirement plan for law enforcement personnel. The City also argues that Oklahoma's anti-discrimination statutes do

not provide a private right of action for alleged age discrimination. Plaintiff responds that the City waived exemption from liability under the ADEA, because it intentionally and knowingly hired plaintiff in violation of Oklahoma law. Plaintiff also asserts that the Oklahoma Supreme Court has recognized a private right of action for age discrimination claimants under Oklahoma's anti-discrimination statutes.

### A.

In 1967, the ADEA was enacted to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). However, the ADEA, as originally enacted in 1967, did not apply to state or local governments. In 1974, Congress amended the ADEA to remove the exemption for state and local governments, but it was unclear if the ADEA, as amended, was constitutional under the Tenth Amendment. See Nat'l League of Cities v. Usery, 426 U.S. 833 (1976) (striking down amendment to Fair Labor Standards Act requiring states to comply with minimum wage requirement); Kopec v. City of Elmhurst, 193 F.3d 894 (7th Cir. 1999) (discussing case law calling into question the validity of the 1974 amendments to ADEA). In 1984, the Supreme Court held that the ADEA could be enforced against state and local governments. EEOC v. Wyoming, 460 U.S. 226 (1983) (holding that ADEA could be applied to personnel decisions concerning state law enforcement officers).

In 1986, Congress amended the ADEA to allow states to enforce any age restrictions concerning the hiring or discharge of law enforcement officers in place before the Supreme Court's decision in Wyoming. These amendments expired in 1993. Congress subsequently amended the ADEA in 1996 to authorize the use of age restrictions for law enforcement personnel in place before

5

Wyoming and permit states to enact new age limitations for law enforcement personnel, even if those restrictions were not in place before Wyoming was decided. The ADEA, in its current form, provides an exemption that permits a state or any political subdivision to enact age-based employment policies concerning firefighters or law enforcement officers, as it states:

> It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken--
>
> **(1)** with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained--
>
>> **(A)** the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or
>>
>> **(B)(I)** if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; or
>>
>> **(ii)** if applicable State or local law was enacted after September 30, 1996, and the individual was discharged, the higher of--
>>
>>> **(I)** the age of retirement in effect on the date of such discharge under such law; and
>>>
>>> **(II)** age 55; and
>
> **(2)** pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(j). To qualify for the statutory exemption, an employer does not have to demonstrate that the age restriction is a bona fide occupational qualification. Feldman v. Nassau County, 434 F.3d. 177, 185 n.5 (2d Cir. 2006).

6

Oklahoma adopted an age restriction for hiring new police officers in 1977. The statute, as enacted in 1977, stated that "[a] police officer shall be not less that twenty-one (21) nor more than thirty-five (35) years of age when accepted for initial membership in any Police Pension and Retirement System." OKLA. STAT. tit. 11, § 50-112 (Supp. 1977). The current version of section 50-112 provides that "a police officer shall be not less than twenty-one (21) nor more than forty-five (45) years of age when accepted for membership in [OPPRS]." OKLA. STAT. tit. 11, § 50-112 (2001). Eligibility for membership in OPPRS is a prerequisite for any person applying for a position as a police officer in any city that participates in OPPRS. Id.

To qualify for the statutory exemption under the ADEA, the City must show that the retirement plan was created by state law before March 3, 1983 and that OPPRS is a "bona fide hiring or retirement plan that is not a subterfuge." Jones v. City of Cortland Police Dep't, 448 F.3d 369, 371 (6th Cir. 2006); Petrelli v. City of Mount Vernon, 9 F.3d 250 (2d Cir. 1993).[3] In this case, OPPRS was created by statute in 1977 and the City joined OPPRS in 1978. Therefore, Oklahoma created OPPRS before March 3, 1983, and the first element for the exemption under section 623(j) is satisfied. As to the second element, plaintiff does not challenge the City's assertion that OPPRS is a bona fide retirement plan under section 623(j). There are few judicial decisions discussing what constitutes a bona fide retirement plan, but the Seventh Circuit has stated that a "bona fide [retirement] plan presumably would be one that is genuine and pursuant to which actual hiring

---

[3] The fact that Oklahoma amended section 50-112 to increase the maximum age limit after 1983 is inconsequential, because section 623(j) is not concerned with changes to state law age restrictions that place law enforcement personnel in a better position than they would have been before March 3, 1983. See Knight v. Georgia, 992 F.2d 1541, 1545 (11th Cir. 1993); Bouras v. Town of Danvers, 11 F. Supp. 2d 159, 163 (D. Mass. 1998).

decisions are made." Kopec, 193 F.3d 894. Under this standard, there is no reason to dispute the City's assertion that OPPRS is a bona fide retirement plan, because the City has presented evidence that OPPRS actively enrolls new members and pays benefits to its members. Thus, the age restriction for hiring new police officers of section 50-112 falls squarely with the ADEA's statutory exemption for law enforcement personnel, and the City is exempt from liability under the ADEA if it terminated plaintiff in compliance with section 50-112.

However, plaintiff asserts that the City waived its "civil liability protection" by intentionally hiring plaintiff in violation of section 50-112, and he cites Oklahoma law concerning waiver and estoppel as a basis for this argument.[4] The Court has reviewed plaintiff's argument and finds no basis for liability of the City under the ADEA. The plain language of section 623(j) appears to cover this precise situation, because it states that "[i]t shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age" if the statutory exemption applies. 29 U.S.C. § 623(j) (emphasis added). The ADEA specifically authorizes state and local governmental entities to make hiring and firing decisions for law enforcement personnel based on age and, under these circumstances, it was permissible for the City to discharge plaintiff based on the age requirement set forth by Oklahoma law.

---

[4] Plaintiff cites no authority suggesting that state law defenses of waiver or estoppel apply to a federal law claim. The Court has conducted independent research on this issue, and has found no instances when a federal court has applied state law waiver or estoppel to a federal employment discrimination claim.

Even if the Court were to consider plaintiff's argument that the City waived the protection of section 623(j) by knowingly and intentionally hiring him in violation of Oklahoma law, the defenses of waiver and estoppel would not apply. As a matter of Oklahoma law, these defenses apply against a governmental entity or political subdivision only if application of these doctrines would further an important public policy of the state. Strong v. State ex rel. The Oklahoma Police Pension Retirement System, 115 P.3d 889, 893 (Okla. 2005); Trust Co. of Oklahoma v. State ex rel. Dep't of Human Servs., 890 P.2d 1342, 1349 (Okla. 1995). In this case, clear public policy, as expressed by statute, required the City to terminate plaintiff's employment and it would have directly contravened the public policy of Oklahoma to ignore the mandatory age for hiring new police officers under section 50-112. As a matter of law, waiver or estoppel would not apply under these circumstances.[5]

The City complied with Oklahoma law when it terminated plaintiff's employment and it is exempt from liability under section 623(j) for its decision. Therefore, the City is entitled to summary judgment on plaintiff's ADEA claim.

**B.**

Plaintiff asserts that he has a private right of action for age discrimination under Oklahoma law based on the Oklahoma Supreme Court's decision in Saint v. Data Exchange, Inc., 145 P.3d

---

[5] Although waiver and estoppel do not apply for legal reasons, the City has also presented evidence that it informed plaintiff at the time he was interviewed that plaintiff was not eligible to participate in OPPRS. Dkt. # 51, Ex. A, at 1. There is also evidence that the City made a good faith attempt to find an exemption for Lawrence even if he was not eligible for membership in OPPRS. These facts counter plaintiff's allegations that the City intentionally hired plaintiff with an intent to mislead him about the status of his employment and, as a factual matter, it does not appear that waiver or estoppel would apply under the circumstances.

1037 (Okla. 2006). The City replies that Saint permits a plaintiff to pursue a tort claim under Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), but Saint does not imply a private right of action under Oklahoma's anti-discrimination statutes.

In Saint, the Oklahoma Supreme Court responded to a certified question from a federal court concerning the availability of a Burk tort remedy for age discrimination claimants. Saint, 145 P.3d at 1038. The court noted that Oklahoma's anti discrimination statutes, OKLA. STAT. tit. 25, § 1101 et seq., do not provide a private right of action, but that the statutes expressed a public policy prohibiting certain types of discriminatory employment practices. Id. at 1038-39. The court stated that "[a]ge discrimination victims are part of the employment discrimination class, and as such must be afforded the same rights as the other members of the class. Therefore, we find that there is a *Burk* tort remedy for those who allege employment age discrimination." Id. at 1039.

While Saint states that a Burk tort remedy is available for age discrimination claimants, it does not imply a statutory remedy for age discrimination under Oklahoma law. The fact that the Oklahoma Supreme Court created a Burk tort remedy for age discrimination expressly precludes a statutory remedy under Oklahoma law. Collier v. Insignia Financial Group, 981 P.2d 321 (Okla. 1999) (Burk tort available only if Oklahoma anti-discrimination statutes do not provide a private right of action); Tate v. Browning-Ferris, Inc., 833 P.2d 1218, 1230-31 (Okla. 1992) (same). Age discrimination claimants are certainly within the "employment discrimination class" described by the Oklahoma Supreme Court, but plaintiff misconstrues the remedy available to alleged victims of age discrimination. Plaintiff has the right to file a Burk tort claim alleging that he was terminated due to age discrimination, but he does not have a statutory claim under Oklahoma's anti-discrimination statutes.

Even if the Court were to construe plaintiff's state law claim as a Burk tort, it is clear that summary judgment for the City is appropriate. Although Oklahoma follows the at-will employment rule, the Oklahoma Supreme Court has recognized a public policy exception to this rule preventing an employer from discharging an employee in a "narrow class" of cases when such discharge would violate public policy. Burk, 770 P.2d at 28. A public policy providing the basis for a Burk tort must be "articulated by constitutional, statutory or decisional law." Shero v. Grand Sav. Bank, 161 P.3d 298, 301 (Okla. 2007). Saint recognized that allegations of age discrimination can be sufficient to state a Burk tort. Saint, 145 P.3d at 1039. However, section 50-112 clearly states that "a police officer shall be not less than twenty-one (21) nor more than forty-five (45) years of age when accepted for membership in [OPPRS]." Plaintiff was 52 years old when he was hired by the City as a deputy police chief. Public policy, as expressed by statute, is clear that plaintiff was not eligible for employment as a police officer with the City and, therefore, plaintiff does not fall within the narrow class for whom a Burk tort is available. Plaintiff has no basis under Oklahoma law to assert that he was fired in violation of public policy, and the City is entitled to summary judgment on plaintiff's state law age discrimination claim.[6]

**IT IS THEREFORE ORDERED** that Defendant's [City of Bixby] Motion for Summary Judgment (Dkt. # 41) is **granted**.

**DATED** this 30th day of October, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] Plaintiff's claim against OPPRS for tortious interference with employment is still pending.