**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOHN LAWRENCE, ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 06-CV-0661-CVE-PJC |
| ) | |
| CITY OF BIXBY and the OKLAHOMA ) | |
| POLICE PENSION AND RETIREMENT ) | |
| SYSTEM, ) | |
| ) | |
|     **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court are Defendant Oklahoma Police Pension and Retirement System's Combined Motion for Summary Judgment and Supporting Brief (Dkt. # 53) and plaintiff's Motion to Strike OPPRS Motion for Summary Judgment (Dkt. # 54).

**I.**

John Lawrence ("Lawrence") was hired as an assistant chief of police and administrative assistant to the chief of police by the City of Bixby ("the City") on May 23, 2005. While Lawrence's job title implies that he served in an administrative capacity, he also carried a badge and a firearm and he had the power to make arrests for the City. Lawrence was 52 years old at the time he was hired. The Oklahoma Police Pension and Retirement System ("OPPRS") is a state-funded retirement program for police officers and the City is a participating municipality in OPPRS. By statute, a new police officer is eligible to participate in OPPRS only if the police officer is between the ages of 21 and 45 at the time he is hired:

> All persons employed as full-time duly appointed or elected officers who are paid for working more than twenty-five (25) hours per week or any person hired by a participating municipality who is undergoing police training to become a permanent police officer of the municipality shall participate in [OPPRS] upon initial

> employment with a police department of a participating municipality. . . . Except as otherwise provided in this section, a police officer shall be not less than twenty-one (21) nor more than forty-five (45) years of age when accepted for membership in [OPPRS].

OKLA. STAT. tit. 11, § 50-112. Under section 50-112, any person hired as a permanent police officer by a participating municipality must participate in OPPRS. Lawrence was not eligible for membership in OPPRS when he was hired by the City and he was not previously a member of OPPRS.

The City did not immediately notify OPPRS that it had hired Lawrence. However, OPPRS received a quarterly report from the Council on Law Enforcement Education and Training ("CLEET"), and discovered that the City had hired Lawrence even though he was ineligible for membership in OPPRS. General counsel for OPPRS, Steven Snyder, sent a letter to the City on February 13, 2006, stating:

> It is my understanding that the police officer in question was over age 45 when employed as a police officer with the City of Bixby. Since Bixby is a participating municipality in the System and since "all persons employed as a full-time duly appointed or elected officers who are paid for working more than twenty-five (25) hours per week . . . shall participate in the System upon initial employment . . . ", then the City of Bixby is in violation of state law. Therefore, the City of Bixby must either terminate the police officer in question or reduce the officer's working hours to twenty-five (25) hours or less per week.

Dkt. # 53, Ex. 1, at 2. The City claimed that Lawrence was not required to participate in OPPRS because his position was classified as an assistant chief of police and an administrative assistant to the chief of police. Under OKLA. STAT. tit. 11, § 51-102, "the chief of police and an administrative assistant" were not classified as police officers, and the City attempted to fit Lawrence's employment into this exemption from participation in OPPRS. On May 9, 2006, Snyder wrote a second letter to the City asking if Lawrence's employment had been terminated or if the City had

reduced his working hours to 25 hours a week or less. The City considered redefining Lawrence's position as a purely administrative role to permit Lawrence to qualify for a statutory exemption but, to serve as a functioning police officer, Lawrence would have to be eligible for membership in OPPRS. On May 17, 2006, the City terminated Lawrence's employment.

OPPRS states that it maintains funding to defray approximately 80 percent of its pension obligations, and it relies on payments from current police officers to pay the remaining 20 percent of its costs. OPPRS claims that "[e]nforcing the requirement of section 50-112 helps OPPRS fund its accrued and future pension obligations because it avoids the negative financial impact on the System that would occur if a municipality hired a police officer who did not make contributions . . . ." Dkt. # 53, at 4. Lawrence does not dispute OPPRS' stated reason for his termination, but focuses on the economic nature of OPRRS' motivations. Lawrence asserts that "OPPRS's overzealous desire to collect pension contributions caused it to ignore the [Fire and Police Arbitration Act] provision exempting Lawrence from participation in OPPRS and to pursue Lawrence's termination with reckless disregard for Lawrence's rights . . . ."[1] Dkt. # 57, at 11.

Lawrence filed this lawsuit against the City alleging that his employment was terminated in violation of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1101 et seq. He amended his complaint to allege a claim against OPPRS for intentional interference with contract. On October

---

[1]   In his response to the City's motion for summary judgment, Lawrence argued that the City violated Oklahoma law by hiring him in violation of the age restriction. Dkt. # 49, at 3. This contradicts his arguments raised in response to OPPRS' motion for summary judgment, and the Court could preclude Lawrence from adopting contradictory positions in the same case. However, it will not be necessary to reach Lawrence's factual argument, because his claim is barred as a matter of law.

30, 2007, the Court granted summary judgment in favor of the City on Lawrence's age discrimination claims. See Dkt. # 52. OPPRS argues in its motion for summary judgment that (1) OPPRS has sovereign immunity from tort claims of intentional interference with contract under Oklahoma's Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. ("GTCA"); (2) Lawrence has no evidence that OPPRS acted with malice; and (3) Lawrence's employment contract with the City was unenforceable due to illegality.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff asks the Court to strike OPPRS' motion for summary judgment because OPPRS' attorneys, Andrew M. Low ("Low") and Victoria V. Johnson ("Johnson"), had not entered an appearance in this case when OPPRS filed its motion for summary judgment.  Plaintiff also requests that the Court preclude OPPRS from using any deposition testimony from depositions taken by Low and that the Court consider all of OPPRS' objections during the depositions waived.  Low is an attorney at the firm of Davis, Graham & Stubbs, LLP, of Denver, Colorado, and he is licensed to practice in Colorado.  Johnson works for the same firm, and she is licensed to practice in Oklahoma and Colorado.  Johnson was admitted to practice in the Northern District of Oklahoma on August 16, 2007, but Low was not sworn in as a member of the bar of this district until November 15, 2007. However, Low filed an application for membership in the bar of this district in August 2007 and his application was approved on September 4, 2007.  Johnson entered an appearance in this case on November 12, 2007 and Low entered an appearance on November 16, 2007.

Local rules require any attorney appearing on behalf of a client in this district to file an appearance.  LCvR 83.4.  If an attorney is not a resident and does not maintain an office in Oklahoma, he or she must associate with an attorney who "maintains a law office within the State

of Oklahoma, and who has been duly and regularly admitted to practice in this Court." LCvR 83.3(a). The local attorney must file a motion on behalf of the non-resident for admission pro hac vice and certify that the non-resident attorney is licensed to practice in the highest court of the state where the non-resident lives. LCvR 83.3(b). Under LCvR 83.6(g), "[a]ny person who before admission to the bar of this Court . . . or who otherwise engages in the unauthorized practice of law before this Court, shall be guilty of contempt of this Court and shall be subject to punishment therefor . . . ."

In this case, OPPRS filed its answer on July 10, 2007, and Low, Johnson, and David Hammond ("Hammond") of Davis, Graham & Stubbs, LLP, were listed as counsel for OPPRS. The answer was signed by Angela K. Martin of the Oklahoma Attorney General's Office, but she noted that Low, Johnson, and Hammond would file motions for admission pro hac vice.[2] Low and Johnson acknowledge that they did not file an entry of appearance before filing a motion for summary judgment for OPPRS on October 31, 2007. However, Johnson was authorized to practice in this district when the motion was filed and Low's application for admission had been approved by the Court Clerk. Although Johnson should have filed an entry of appearance, there is no indication that she engaged in the unauthorized practice of law. The docket sheet shows that she did not file any motions before August 16, 2007, and plaintiff has not alleged that she took part in any other pretrial activities before that date. However, the record is clear that Low signed a motion for summary judgment and took depositions in this case before he had been formally admitted to the bar for the Northern District of Oklahoma.

---

[2]   Low states that Hammond was listed as an attorney in OPPRS' answer, but he has not actually participated in OPPRS' defense.

6

Under LCvR 83.6, Low technically engaged in the unauthorized practice of law in this district. Instead of appearing pro hac vice, Low filed an application for membership in the bar of the Northern District of Oklahoma. However, there is no indication that he purposefully attempted to engage in the unauthorized practice of law. He did all that he could to become a member of this bar except be sworn in. Plaintiff's proposed remedy -- striking OPPRS' motion and other evidence -- would punish OPPRS rather than Low. Plaintiff cites Mann v. Boatright, 477 F.3d 1140 (10th Cir. 2007), but Mann does not support plaintiff's argument that OPPRS' motion for summary judgment should be stricken. In Mann, Beverly Mann ("Mann"), a licensed attorney in Illinois, attempted to file and prosecute a claim on behalf of her legally incompetent father in Colorado state court and federal district court. Id. at 1150. The Tenth Circuit held that she had standing to pursue legal claims on behalf of her father but, as her father's guardian, she needed to obtain legal counsel to ensure that her father's interests were adequately protected.[3] Mann is clearly distinguishable from the present case, and it does not stand for the general proposition that any pleading or motion filed by an attorney awaiting formal swearing in should be stricken.

The Court has reviewed OPPRS' motion for summary judgment and finds that OPPRS has raised legitimate arguments that should be considered, even though its counsel did not follow proper appearance procedures. The requirement for attorneys to file an appearance "serves as a convenience to the Court and to all parties in that it identifies the attorney to which pleadings and other materials should be sent." Kiro v. Moore, 229 F.3d 228, 231 (D.N.M. 2005). Plaintiff has not

---

[3] The Tenth Circuit also noted that Mann's filings on behalf of her father were frivolous, and imposed monetary sanctions and filing restrictions against her. It is clear that her appeal would have been dismissed even if she had been authorized to appear before the Tenth Circuit.

argued that he has been prejudiced in prosecuting his claims against OPPRS due to the status of OPPRS' counsel. Further, counsel attempted to comply with the local rules and no sanction or disciplinary action is warranted. The Court finds that plaintiff's motion to strike OPPRS' motion for summary judgment should be denied.

## IV.

OPPRS argues that it has sovereign immunity from any tort claim that involves the element of malice, because any such tort requires a showing of bad faith on the part of OPPRS. Plaintiff does not respond to this argument but, instead, argues that OPPRS was not authorized by statute to order the City to terminate his employment. OPPRS is correct that its defense of sovereign immunity must be considered before the Court reaches plaintiff's argument because, if OPPRS prevails, plaintiff's claim is barred as a legal matter.

The GTCA provides a limited waiver of sovereign immunity from tort claims, but the GTCA is clear that Oklahoma and its political subdivisions have not waived sovereign immunity from any claims not expressly permitted by the GTCA. Mustain v. Grand River Dam Authority, 68 P.3d 991, 998 (Okla. 2003); Spencer v. City of Bristow, 165 P.3d 361, 365 (Okla. Civ. App. 2007). The GTCA provides that "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." OKLA. STAT. tit 51, § 152.1(A). OPPRS is a state agency under the GTCA, and it is entitled to sovereign immunity from suit unless such immunity is waived by the GTCA. See OKLA. STAT. tit. 51, § 152(2); Steelman v. Oklahoma Police Pension and Retirement System, 128 P.3d 1090, 1096 (Okla. Civ. App. 2005) (OPPRS is liable for tort only if sovereign immunity is waived by the GTCA).

The Oklahoma Supreme Court has interpreted the GTCA to preclude any tort claim against a state agency if the tort claim requires a showing of bad faith conduct by a state employee. In Fehring v. State Ins. Fund, 19 P.3d 276, 284 (Okla. 2001), the Oklahoma Supreme Court stated:

> After this Court abrogated common-law sovereign immunity in *Vanderpool v. State* [762 P.2d 1153 (Okla. 1983)], the Oklahoma Legislature re-adopted sovereign immunity statutorily, waiving such immunity "only to the extent and in the manner provided in [the GTCA]." In such regard, the GTCA provided in pertinent part that: "[t]he state . . . shall not be liable under the provisions of [the GTCA] for any act or omission of an employee acting outside the scope of his employment." "Scope of employment" is defined as: "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned . . . ." The above provisions, taken together, immunize a governmental entity falling under the GTCA when, in order to prevail on the particular tort claim sued upon, a plaintiff is required, as a matter of law, to show conduct on the part of a governmental employee that would mandate a determination the employee was not acting in good faith. In other words, when, for viability, the tort cause of action sued upon requires proof on an element that necessarily excludes good faith conduct on the part of the governmental employees, there can be no liability against the governmental entity in a GTCA-based suit.

Id. at 283 (internal citations omitted). The state or its agencies may not be sued for any tort for which malice or recklessness is an essential element. Id. at 283-84; Tanique, Inc. v. State ex rel. Oklahoma Bureau of Narcotics and Dangerous Drugs, 99 P.3d 1209, 1214 (Okla. Civ. App. 2004). In order to prevail on a claim for intentional interference with contract, a plaintiff must show:

1. That he or she had a business or contractual right that was interfered with.

2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable.

3. That damage was proximately sustained as a result of the complained-of interference.

Mac Adjustment, Inc. v. Property Loss Research Bureau, 595 P.2d 427, 428 (Okla. 1979); see also Niemeyer v. U.S. Fidelity & Guar. Co., 789 P.2d 1318, 1320 (Okla. 1990) ("An action for tortious interference of contract arises when one maliciously interferes in a contract to the detriment of the

9

other."). As a matter of law, the state of Oklahoma and its political subdivisions can not be held liable for intentional interference with contract, because malice is an essential element of the claim. Tanique, 99 P.3d at 1218 ("Clearly, malice is an essential element of a cause of action for interference with business or contractual rights and, under *Fehring*, is not a viable cause of action against the State.").

Plaintiff raises several factual arguments in response to OPPRS' motion for summary judgment, but he does not address OPPRS' argument that it has sovereign immunity from a tort claim of intentional interference with contract. He argues that OPPRS was not authorized by statute to seek his termination and that he was exempt from participation in OPPRS. However, the Court does not need to reach these arguments because OPPRS has sovereign immunity. Oklahoma appellate courts have considered this precise legal issue, and Oklahoma law is clear that neither the state nor its political subdivisions can be held liable in tort for intentional interference with contract. As a matter of law, there is no possibility that plaintiff can prevail on his tort claim against OPPRS and, since plaintiff has not filed any other claims against OPPRS, summary judgment should be entered in favor of OPPRS.

**IT IS THEREFORE ORDERED** that Defendant Oklahoma Police Pension and Retirement System's Combined Motion for Summary Judgment and Supporting Brief (Dkt. # 53) is **granted** and plaintiff's Motion to Strike OPPRS Motion for Summary Judgment (Dkt. # 54) is **denied**. A separate judgment is entered herewith.

**DATED** this 14th day of December, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT